E-FILED
Friday, 17 July, 2026  09:37:26 AM
Clerk, U.S. District Court, ILCD

IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS
SPRINGFIELD DIVISION

| | | |
|---|---|---|
| THOMAS ANGELI,<br>    Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 25-cv-3258 |
| | ) | |
| ECHO BEEKMAN, LATOYA HUGHES,<br>HOLLY HOOKS, and KIM SMITH,<br>    Defendants. | ) | |

## OPINION

**COLLEEN R. LAWLESS, United States District Judge:**

Before the Court is Defendants' Motion to Dismiss Plaintiff's Complaint under Rule 12(b)(6). Plaintiff's Complaint brings two counts against four IDOC employees ("Defendants") under 42 U.S.C. § 1983 claiming Defendants unlawfully suspended and discharged him in retaliation for his speech (Count I) and his race (Count II).

Plaintiff's Complaint alleges the following relevant facts. On July 6, 2024, Sonya Massey, a Black woman, was shot and killed by a police officer in her home.[1] (Doc. 1 at ¶ 10). Massey's death drew national attention with the President, Vice President, and Governor of Illinois all commenting. (*Id.* at ¶ 11). Many in the public expressed the view that Massey's killing was racially motivated. (*Id.* at ¶ 13). The phrase "Sonya Massey, say her name" became a rallying cry amongst civil rights protesters. (*Id.*). The incident was widely discussed on social media. (*Id.* at ¶ 12). Plaintiff Thomas Angeli, who was a

---

[1] A jury later found the police officer guilty of second-degree murder. *People v. Grayson*, 2025 IL 131279, ¶ 3 (per curiam).

correctional officer for the Illinois Department of Corrections ("IDOC") at the time, made

three Facebook posts about the incident:

> [1] "say her name" wtf does that even mean?? If I say it 3x in a mirror will she appear behind me with a boiling pot of water lol like candyman?

> [2] Saw the body cam footage, obviously no need for the premature shooting but that chick was high as shit and couldn't follow simple requests . . . and I couldn't hear what she said right b4 he did shoot?? Anyone else hear what she said??

> [3] Sara Smith I've been in corrections for almost 10 years and her body language the way she was acting tells me something weird was going on.

(*Id.* at ¶¶ 1, 14). Sometime after these posts, the IDOC suspended and later discharged

Plaintiff. (*Id.* at ¶ 18).

## I.     DISCUSSION

### A.  Legal Standard

A motion under Rule 12(b)(6) challenges the sufficiency of a complaint. *Christensen*

*v. Cnty. of Boone, Ill.*, 483 F.3d 454, 458 (7th Cir. 2007). When considering a Rule 12(b)(6)

motion, the court construes the complaint in the light most favorable to the plaintiff,

accepting all well-pleaded allegations as true and construing all reasonable inferences

in his favor. *Id.* at 458. To state a claim for relief, a plaintiff need only provide a short and

plain statement of the claim showing he is entitled to relief and giving defendants fair

notice of the claim. *Maddox v. Love*, 655 F.3d 709, 718 (7th Cir. 2011). However, the

complaint must set forth facts that plausibly demonstrate a claim for relief. *Bell Atl. Corp*

*v. Twombly*, 550 U.S. 544, 547 (2007). A plausible claim is one that alleges factual content

from which the Court can reasonably infer that defendants are liable for the misconduct

alleged. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Merely reciting the elements of a cause of action or supporting a claim with conclusory allegations is insufficient to state a claim. *Id.* The complaint must do more than assert a right to relief that is "speculative." *Virnich v. Vonvald*, 664 F.3d 206, 212 (7th Cir. 2011).

### B. Analysis

### (1) Documents Outside the Complaint

The Court must first determine what materials it may consider when assessing the sufficiency of Plaintiff's Complaint as Defendants attach 105 pages of documents to their motion to dismiss (collectively, "Attachments"). The Attachments seemingly include internal IDOC documents on Plaintiff's suspension, termination, and past discipline; a copy of the IDOC's standards of conduct; news stories covering Massey's killing; screenshots of social media posts; and documents indicating Plaintiff's posts prompted significant public backlash including threats against IDOC staff, property, and employees. Defendants advance no argument on how the Attachments meet the standard governing when courts may consider documents attached to a motion to dismiss. Defendants did not seek leave to file a reply to address Plaintiff's challenge to the Attachments.

At the pleadings stage, "a court may consider, in addition to the allegations set forth in the complaint itself, documents that are attached to the complaint, documents that are central to the complaint and are referred to in it, and information that is properly subject to judicial notice." *Williamson v. Curran*, 714 F.3d 432, 436 (7th Cir. 2013). Aside

from screenshots of Plaintiff's Facebook posts, none of the documents in the Attachments are referred to in the Complaint or subject to judicial notice. A court may "take judicial notice of an adjudicative fact that is 'not subject to reasonable dispute' because it: (1) is generally known within the trial court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." *In re Lisse*, 905 F.3d 495, 496 (7th Cir. 2018) (quoting Fed. R. Evid. 201(b)).

Judicial notice "is an adjudicative device that substitutes the acceptance of a universal truth for the conventional method of introducing evidence." *GE Capital Corp.*, 128 F.3d at 1081; *see, e.g.*, *Consolidation Coal Co. v. United Mine Workers of Am., Dist. 12*, 213 F.3d 404, 407 (7th Cir. 2000) (judicial decisions); *Owens v. Duncan*, 781 F.3d 360, 362 (7th Cir. 2015) (weather data); *Ikerd v. Lapworth*, 435 F.2d 197, 205 (7th Cir. 1970) (distance between two places); *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 592 n.11 (1993) (allowing courts to take notice of "theories that are so firmly established as to have attained the status of scientific law, such as the laws of thermodynamics").

Here, Defendants ask the Court to take judicial notice of a trove of unverified, contested documents without any argument as to how the Attachments represent a "universal truth" or are "capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." *GE Capital Corp.*, 128 F.3d at 1081. As such, the Court only takes judicial notice of the screenshots of Plaintiff's Facebook posts that are referenced in and central to the Complaint. The Court also declines to convert Defendants' motion to one for summary judgment because Plaintiff requests more

discovery and for the reasons detailed below. *Levenstein v. Salafsky*, 164 F.3d 345, 347 (7th Cir. 1998) (courts have discretion to decide whether to convert a motion to dismiss into one for summary judgment).

### (2) First Amendment Retaliation Claim (Count I)

As a public employee during the relevant period, Plaintiff was subject to more relaxed speech protections than a private citizen: "Public employees do not sign away their free speech rights when answering the call to public service; at the same time, public employees' rights to free speech are not absolute." *Hicks v. Illinois Dep't of Corr.*, 109 F.4th 895, 900 (7th Cir. 2024) (citing *City of San Diego v. Roe*, 543 U.S. 77, 80 (2004)). "[T]he government, as employer, has greater leeway to control the speech of its employees to ensure discipline and harmony in government operation." *Id.* (citing *Waters v. Churchill*, 511 U.S. 661, 671–72 (1994)). For a public employee to establish a First Amendment violation for retaliation, she "first must prove that her speech is constitutionally protected." *Kubiak v. City of Chicago*, 810 F.3d 476, 481 (7th Cir. 2016).

To determine whether Plaintiff's speech is protected by the First Amendment, the Court first asks whether Plaintiff "spoke as a citizen upon a matter of public concern."[2] *Id.* Defendants do not contest this predicate issue. Rather, Defendants contest whether Plaintiff's "interests in speaking on a matter of public concern outweigh the government's

---

[2] "[W]hen public employees make statements pursuant to their official duties, the employees are not speaking as *citizens* for First Amendment purposes." *Kubiak*, 810 F.3d at 481 (emphasis added). And "public concern" means a "legitimate news interest" or "a subject of general interest and of value and concern to the public at the time of publication." *Id.* at 482 (internal quotation marks omitted).

interest in promoting effective and efficient public services" — if so, Plaintiff's speech is constitutionally protected. *Hicks*, 109 F.4th at 900. This analysis, often called the "*Pickering* balancing test," is fact intensive. *See Pickering v. Board of Educ.*, 391 U.S. 563, 568 (1968).[3] For that reason, *Pickering* is usually applied at summary judgment because courts need evidence often only producible during discovery in order to conduct the appropriate balancing. *Gustafson v. Jones*, 117 F.3d 1015, 1019 (7th Cir. 1997) ("Normally, application of the *Pickering* balancing test will be possible only after the parties have had an opportunity to conduct some discovery."). The Seventh Circuit said in *Gustafson* that it would be "a rare case indeed" where a Court could find against a plaintiff under the *Pickering* test at the pleadings stage.[4] *Id.*

Here, Plaintiff's Complaint does not include much beyond a short and plain statement of the claims. Fed. R. Civ. P. 8(a). The allegations do not discuss any subsequent fallout or employer justifications for Plaintiff's termination. As such, Plaintiff's case is not the "rare case" where the Court may conduct a *Pickering* balancing on the pleadings, because Defendants' arguments frequently rely on the Attachments, not the Complaint. Defendants' arguments are not ripe for consideration at this phase of the litigation.

---

[3] Under *Pickering*, the Seventh Circuit considers "(1) whether the speech would create problems in maintaining discipline or harmony among co-workers; (2) whether the employment relationship is one in which personal loyalty and confidence are necessary; (3) whether the speech impeded the employee's ability to perform her responsibilities; (4) the time, place and manner of the speech; (5) the context in which the underlying dispute arose; (6) whether the matter was one on which debate was vital to informed decisionmaking; and (7) whether the speaker should be regarded as a member of the general public." *Kristofek v. Village of Orland Hills*, 832 F.3d 785, 796 (7th Cir. 2016).

[4] Of note, the case Defendants heavily rely on for *Pickering* balancing, *Hedgepeth v. Britton*, No. 21 CV 3790, 2024 U.S. Dist. LEXIS 28510 (N.D. Ill. Feb. 20, 2024), is a summary judgment case.

Accordingly, construing the allegations in light favorable to Plaintiff, his First Amendment claim stands.[5]

### (3) Fourteenth Amendment Claim (Count II)

Defendants argue the official-capacity charges fail to state a Fourteenth Amendment claim because "neither a State nor its officials acting in their official capacities are 'persons' under § 1983." *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 (1989). Indeed, those sued in their official capacity are not "persons" for § 1983 purposes, but this principle is only relevant to the extent that those sued in their official capacities cannot be held liable for damages under § 1983. *Hearne v. Board of Educ. of City of Chicago*, 185 F.3d 770, 776 (7th Cir. 1999) (collecting cases). A § 1983 official-capacity suit is permissible when the claim is for equitable relief. *Williams v. Wisconsin*, 336 F.3d 576, 580–81 (7th Cir. 2003); *Power v. Summers*, 226 F.3d 815, 819 (7th Cir. 2000). Here, the Complaint explicitly states Defendants are sued in their official capacity "for the limited purpose of implementing equitable relief." (Doc. 1 at ¶¶ 3–6). As such, Plaintiff's official capacity claims survive dismissal.[6] Defendants only make this argument as to Count II, but the Court's official-capacity reasoning is equally applicable to Count I as both claims are brought under § 1983.

---

[5] The Court's conclusion would remain the same if it considered the IDOC's social media policy, which is included in the Attachments and appears to be undisputed by Plaintiff.

[6] Defendants state "[a]ll defendants named in the Plaintiff's complaint are state officials acting in their official duties in IDOC, a state agency." (Doc. 9 at 11). But each defendant is named in both their individual and official capacities. To the extent that Defendants also take issue with personal liability, they fail to address how each defendant did not personally "cause[] or participate[] in [the] alleged constitutional deprivation[s]," *Wolf-Lillie v. Sonquist*, 699 F.2d 864, 869 (7th Cir. 1983), and so have waived the issue.

## II.    CONCLUSION

For the foregoing reasons, Defendants' Motion to Dismiss (Doc. 9) is DENIED.

ENTER: July 17, 2026

_____

COLLEEN R. LAWLESS
UNITED STATES DISTRICT JUDGE